Welcome. We are pleased to have you here today on what is the final day of this oral argument sitting. For those of you, I'm sure a lot of you are very familiar with the system that we work with here when you stand up at the podium, but in case there's anybody here who is not familiar with it and for any audience member, if this is your first time, we work on a traffic light system. So when the light is green, you are free to keep going. We may have questions, but once you see the yellow light, that is letting you know that you have two minutes left. That's when you should start to think about wrapping things up. And red means your time has expired, which means it's not time to move on to a next topic. It's time to finish up the sentence that you were thinking about. Of course, we may have questions that push you past the red light. That's fine. In that circumstance, please answer our questions and we'll let you know when we're finished. And with that, let's go ahead with the first case. New South Media Group, LLC, Debrick Williams et al. versus Rainbow City, Alabama. 24-10895. Mr. Webb, when you are ready, I see that you have some time for rebuttal as well. Thank you, Your Honor. May it please the court. Good morning, my name is Adam Webb. I'm here with Franklin Lemond of Webb, Clayson, Lemond, representing our four appellants, which is a sign company, a local area politician and property owner, a local citizen of Rainbow City, who's also a property owner, and a local business from Rainbow City. And I thought it was interesting in preparing for today that exactly 20 years ago, another appellant stood here making basically the same arguments that I will be making. And this led to the seminal decision of Salantic, LLC versus the City of Neptune Beach, where Judge Marcus wrote a very compelling decision which found that these content-based exemptions, 16 of which we have in this case, 17 of which there were in that case, basically the same, led to the determination that the code was content-based and therefore subject to strict scrutiny, which it could not meet. That also meant that there had to be procedural safeguards, including time limits on permitting in the code, which they didn't have in Neptune Beach and they do not have in Rainbow City. Shockingly, 16 years later after that case came out, a unanimous decision of this court, the city had not made any changes. It is content to have a totally manifestly illegal sign code on the books. Four years ago we began this case and they still have a manifestly unconstitutional law on the books. That's where the courts come in. Unfortunately, what happened below was kicking the can on down the road, using technical issues to try to avoid reaching a very important decision for the people and the businesses and the people that come through the city of Rainbow City. If you look at the codes, you will see that the same logic applies. Here, there were 16 content-based exemptions in Rainbow City. Things like real estate signs, things like political signs, things like construction signs, things like special event signs. This is the government micromanaging speech. Every first-year law student in con law learns that this could not possibly be allowed. Well, just to be clear, there are the exemptions for the content you identified and then there's a blanket prohibition against billboards. Are you saying that the, first, did you all challenge the constitutionality of the billboard prohibition? Because I didn't see that in your complaint. District Court didn't think you did, so I just want to be clear. No, we did not. It does not apply to us, as you've seen in our briefing, both below and here. But we did not challenge that. And I'll note that in Solantic, if you look at page 1252, there were four reasons why the sign in that case violated the code that were never challenged. It didn't have a permit. It had visible movement achieved by electrical means, etc. It had optical illusion of movement by means of the design pattern of giving the illusion of motion or changing of copy. And it had lights or illuminations which flash, move, rotate, etc. There were four reasons why the sign at issue in Solantic did not meet the code, that were not challenged. Didn't mean that that sign company, that that appellant could not raise all these problems, such as the exemptions that allowed others to do exactly what the city said they could not do. And let's- Well, just to be clear again, so in this case, if you have a political sign, you can post the political sign, you just can't do it through a billboard. Is that correct or incorrect? Well, please look carefully at how they define billboard and how they define advertiser, which is one of the words in the definition of billboard. It's, I've never seen it before. I mean, a lot of cities define billboard as off-premise content. A lot of them define it based on size, larger than 200 square feet, 300 square feet. Here, they define it as any sign that is sold, leased, or donated to an advertiser. And then they define advertiser as any person trying to convey a message. Right, and in this case, you're talking about political messages and other messages. Is it that you're saying, but your clients can communicate those messages just not through a billboard, which makes it more manner restriction as opposed to a content-based restriction? The applications here were all for exempt signs. The court found that exempt signs were burdened by the billboard prohibition. But I would caution this court to look very closely at that. It's not possible. And it would defy the rules of statutory construction if that were the case. For example, you've mentioned political signs. Almost every political sign has a candidate on it. It might have a party, it might have an idea. That is an advertiser under this code. This is somebody or something, an entity or a person trying to convey a message. That is 100% a billboard, 100%. So the prohibition on billboards defeats every political sign in the city of Rainbow City. It also defeats every construction sign. Construction signs are defined as a sign that allows the names of the persons and firms performing services or labor or supplying materials to the construction project. But why aren't you challenging the constitutionality of the billboard provision? I mean, it seems there's a gaping hole there. Well, it clearly does not apply to these exemptions. These exemptions are to be read without the billboard provision. You look at, for example... Well, it says it does, and you've challenged a whole host of the provisions, but not the billboard provision. But it can't. I mean, under the rules of statutory construction, special event signs are for grand openings of stores, circuses, fairs, that's the type of thing. Those are all advertisers under the definition of the code. The billboard provision would stop all special event signs. It would stop all political signs. It would stop all construction signs, and it would clearly stop all real estate signs with the name of the agent and the real estate company on there. But because you haven't challenged the billboard provision, so I understand that you are bringing a facial unbridled discretion challenge to other provisions. And under our case law, under CAMP, you have to show you were subject to those other provisions. How were your clients subject to the provisions you challenge in light of the fact that the city is telling you the signs are categorically prohibited by the billboard provision? So even if we agree with you, okay, unbridled discretion on the other provisions, and how do you get relief? Because at the end of the day, you haven't challenged the billboard provision. Well, as I was addressing previously, just to be clear, it doesn't apply to these exemptions. Secondly, it doesn't apply to our signs. Please look closely at our signs. The applications here clearly are not billboards. Okay, an American flag is not a billboard. There is no advertiser. A painting is not a billboard. There is no advertiser. The problem is that the city said they were billboards and you're not challenging that. So, I mean, sure, maybe you can challenge their reading of what a billboard is, their determination, but that's not what is before us. But your argument seems to come back to that. Let me be very clear. I was not clear enough. We absolutely are challenging, and have challenged below and are challenging here, that the term billboard would apply to our signs. Okay, it doesn't, flat out, obviously. We have no advertiser when you're putting up an American flag or a Christian flag. There is no advertiser. There is no person or entity conveying information to the public there. It is a message near and dear to my client's heart. Also, the beautiful painting images that were submitted to the city. So, there is no doubt that we are not covered by the definition of billboard, which was argued below and was argued here. I know the city has said we didn't argue it, but we have shown you the page numbers where we argued it extensively. We showed, for example, that an American flag and a Christian flag do not have an advertiser. Therefore, they cannot be a billboard. That is an essential element of the definition of billboard. What if we agree with the city that your client's signs were billboards? Does your client still have standing to challenge the other provisions that you allege give the city officials unbridled discretion? 100%, Your Honor, because if you look at CELANTIC and many other decisions of this court, Trustville is a good example. KH Outdoor versus Trustville and Tinsley Media versus Pickens County, those are good examples. Even the Dimmick case, which is cited in a lot of those. But the CELANTIC sign violated four separate provisions. This is at 1252 of CELANTIC, of that code. Doesn't matter. Judge Marcus has no problem allowing them to therefore go on and challenge the exemptions, the content-based exemptions that were improper. Based on that challenge, the code was invalidated. It was also invalidated because as a content-based ordinance it had to have time limits. Both of those defects are here as well. But if the applications were for billboards, and in my hypothetical I'm saying we agree with the city's determination that they were in fact billboards, then they were prohibited no matter what. How did the city apply the other provisions to your client in a way that your clients were subject to those provisions? Please understand, if the city was to allow itself, for example, to put the exact signs that we wanted to put up, which it did, it is totally exempt. It can put up an informational sign of any size, any height, any electric, whatever they want to do, they can do. The city is allowed to do that under those exemptions. That clearly allows us to challenge such an exemption because there is no reason why the city's sign... In my hypothetical, the city has said they're billboards. We agree. The three of us agree. This is in my hypothetical. I have no idea what my colleagues think, and I'm not suggesting that this is what I think. This is my hypothetical. Under those circumstances, if in fact, you're proposing met the requirement for billboard, how are you subject to the other provisions? Because the city at the end of the day is going to say, it's a billboard. Because the city and numerous other entities, favored entities, such as the utility companies, are allowed to post any sign they wish under those exemptions. That clearly affords my client, who's got a sign that's no more obnoxious than their sign. You're still resisting the hypothetical. Then still. I'm not trying to. I'm trying to show why, even if it is a billboard, we still, just like Solantic and many other cases, get to challenge the content-based exemptions that are totally improper, that didn't benefit us, but benefit many other people, including the city itself. Thank you. So we find that the city's determination, because I think this is a fair determination, that the exemptions don't apply and the signs you're proposing are billboards. How are you able to challenge the other provisions? I mean, those two findings would be, just defy the text of the code. But if the court was to reach those decisions, still, you have four locally concerned people, businesses, and they get to challenge this code. That's clear. How can we, if we make those findings, that we don't think that the city's interpretation is correct, that billboard trumps the exemptions, how do we give you relief that you want? Because at the end of the day, the city's like, you didn't challenge the billboard ordinance. It's a billboard. No. I mean, a good example would be, for example, the lack of having a time limit on signs. Still, still in the city, there's no time limit on sign permit applications. City can take as long as it wants. The courts have always said that anyone who might apply for a sign, and we have four locally concerned people here as appellants, can challenge that because they're going to be applying for signs. They're going to be posting signs in the future. Anyone can challenge that because it's a procedural defect that affects all signs. So we do have the ability, the standing, all four of these plaintiffs would have the standing to challenge that and the content-based provisions as well. Thank you. Good morning, your honors. Ed Howard here for the city of Rainbow City, Alabama. I am here to tell you that the trial court was right. The constitutional harm alleged here was from the billboard prohibition. Now, they've tried to get around that and dance around that by saying these just aren't billboards and we're not a billboard. These aren't advertisers. They admitted in their complaint three times that their signs are used by advertisers. Their owner admits twice in the record that their signs are used by others. They state to the trial court in the summary judgment brief that they have a dynamic sales force. They are clearly marketers of the display space on these signs that, by definition, are billboards. Well, can you break down, I mean, I understand your position, I believe, but I also think the other side does have a point. One of the proposed signs is a flag and section 213 of the regulations creates an exemption for flags. One of the, also the applications included what does appear, arguably, to be art. Section 13 makes an exemption for artistic works. So can you explain why they are so off the mark in saying that the content is being, that they are not benefiting from the exemptions in section 213 when, arguably, their signs appear to fit within those exemptions? I think I'll start with this, Your Honor. In the ordinance, section 214 begins with this statement. Except we're qualified below in 214, the following signs are specifically prohibited throughout the city. And one of them is number 13, billboards. So the trial court appropriately read and the city appropriately interpreted the ordinance to say that you don't get to 213 until you go through 214. And if it's a billboard, it doesn't matter if it's a flag, a construction sign, a piece of art. If it is something that is going in the display space on a structure, a sign that is erected for the purpose of making available that display space to someone else, it's a billboard. And you can say that, yes, these things are flags, but what they're asking for is not for a flag. They're asking for a display on a sign erected for the purpose of making available that display space. So if it's a big 200 by 200 digital sign, which is what they're asking for, for a permit, it doesn't matter if it's a flag that's displayed there, a political message, a piece of artwork, a religious message, it doesn't matter. That's why their argument about they're just not billboards because there aren't any advertisers fails. What they were seeking were billboards first. It's content neutral. They've argued CELANTIC. Here's the thing about CELANTIC. CELANTIC starts, the first half of CELANTIC starts and talks about content exemptions and finds that they are content based. The second part of CELANTIC where they discuss the time constraints makes it clear that the time constraints are only considered when you have a content based determination. And in CELANTIC, the court says that under the Supreme Court's Freedman case, if it's content based, then you also have these restrictions that cannot constrain the time limits or cannot afford unconstrained time limits. But under the Thomas case, if it's not content based and it's content neutral, then the time constraints limitations don't apply. But going back, Your Honor, what you kept asking Mr. Webb about was how do you get around the fact that the record shows that these are indeed definitionally billboards? And the fact is, is that you can't because the harm is not from some sort of time constraint. They had all the time in the world. As the record shows, because there was a delay, the city allowed them to proceed procedurally with the variance procedures and so forth. They were not harmed by that. That's what the trial court found. No harm, no traceable harm, therefore no standing, therefore no subject matter jurisdiction. Same thing with the unfettered discretion. The trial court said that even if it found that some of those exemptions might allow too much discretion, redressing that problem still doesn't get the plaintiffs what they need because they're still asking for billboards. And it's the same thing with the two or three others. Let me ask you a question.  Based on what I understand from the city's perspective of how these provisions function, do you concede that the billboard provision did not exist? So that's the world we're traveling under in my hypothesis. Right. That plaintiff's signs would be exempt from the general permit requirements under the provisions of 213. I haven't gone that far into it, Your Honor, but the exemptions in 213 are there for the purpose of allowing signs, many of which the plaintiffs might be entitled to. Okay, so arguably. Arguably, that's why you have 213. So let me get this, now let me sort of drill down on what my point is. Assuming there's no billboard provision and you have these exemptions, would the plaintiffs have been required to file sign permit applications? And the reason I'm asking is the section 212 requires signs to have permits, but it explicitly states that exempt signs do not exist. So if I'm somebody coming, I want to put up a sign. It is not in order, the billboard provision doesn't exist. Do I still have to go through the permit process, or do I have to say, oh, no, it's exempt, I don't have to file for it? You know, it would be hard for me to tell you what someone coming there would know what to do. I don't know, Your Honor. But the fact of the matter is, in this case, these plaintiffs were asking for something that is clearly a billboard. So we just never get there. So... Well, isn't that a debate, whether or not it's a billboard? And if they're saying that our suit is based on the fact that we didn't benefit from the exemptions in 213, why isn't that enough, at least for purposes of alleging an injury, to get them past this first stage? And that goes to the balance of making sure for purposes of standing, we're making sure they've alleged an injury, as opposed to being able to ultimately prove the injury. Because the injury they have alleged, the harm they've alleged, the loss of income that they've alleged, all is from not getting their billboard permits. Because those are the things they didn't get that they would have otherwise charged someone for. And as I've said before, the record is clear. They are a marketer of display space. That's how they make their money. So we start there. The injury is from not getting billboard. The loss of income is not from some time constraint. It's not from some unfettered discretion. Well, you're saying that the injury was not getting their sign approved. The city is saying the sign is a billboard, and that's the debate. So again, I'm just wondering, is that not leading to the merits of their claim, as opposed to whether they've alleged enough for purposes of standing? The trial court correctly found, as the city did, that the traceable harm, the harm comes from not getting the billboard permit. And the harm is what determines standing. And the standing is what determines subject matter jurisdiction. That's- And I understand that, and maybe this is the end of our colloquy, but again, because you're inserting billboard, but their argument is that it's not a billboard. So again, if they're saying we should have gotten the benefit of the exemptions, why is that not enough to at least get past the standing inquiry at this stage? Because they weren't asking for anything that was not a billboard. And they have not shown, by any facts in the record, how what they were asking for were not billboards. Billboards are very specifically defined. There is no discretion left. But they're saying that they were subject to some of these other provisions. If they're subject to these other provisions, they are entitled to mount an unbridled discretion challenge if indeed there is unbridled discretion in the statute. And I'm just trying to figure out if they were going to lose under billboard provisions, is that the end of the inquiry? Or do we say, okay, you still had to file your permit application, you were thus subject to it, and so you can mount an unbridled discretion challenge? No, it is the end of the conversation, Your Honor. But they were billboards. They weren't asking for signs that didn't meet the definition of a billboard. That would be a different case. They were asking for signs that clearly were signs owned by the applicant, erected for the purpose of selling or leasing the display space to an advertiser. And as we've said before and as he's said, an advertiser is any entity seeking to convey any message to the public that is content neutral. They have not shown to the district court nor argued here how what they've said were not covered by that definition. They've argued no facts, they've made no allegations nor facts in the record that show why these things weren't as the district court properly defined them. Under the ordinance, that's what billboards are. They didn't get their billboards, that's the harm. Unfettered discretion, content-based, too much discretion, over-breath, all their arguments except the one they didn't make, didn't cause them the harm. And that's what subject matter jurisdiction is premised upon. Harm, standing, subject matter jurisdiction. So once they fail to show why these aren't billboards, yes, we have reached the end of the argument. That's what the trial court said, that's what we say. Slantic doesn't apply, as I showed you before, because this is content neutral, and they haven't shown how this isn't content neutral. Finally, they challenge in some way the zoning ordinance, that the variance procedures allow too much unfettered discretion. Variance procedures are set by the state of Alabama in the zoning enabling legislation. They have not challenged those, they have not put the Attorney General on notice, but they're challenging that as unconstitutional. Variance procedures require particular showing of undue hardship, unnecessary hardship. Case laws replete with the application of those standards of variance procedures. So those other arguments fail. We still come back to what they were seeking is billboards. That's their business. They didn't get them, they were harmed, but they didn't challenge 214, which is the prohibition, and these other things were not what caused them the harm. Ergo, no jurisdiction, no standing, no constitutional harm. I'll be glad to take any other questions. Thank you, Your Honors. Your Honor, do we have another five minutes? We all know the childhood story, the emperor with no clothes, and that's what I'm reminded of here when you hear that this code is content neutral. I mean, you have to look at the emperor and say he's got a full body of clothes on, because it's replete with content-based micromanaging of speech. So let's just, yeah. Well, first, let's talk about the advertiser definition. Arguably, the damages you're seeking do not support a conclusion that your clients are not advertisers. You specifically allege that one of your clients has lost business due to constraints placed on the signage, and the definition of an advertiser does suggest that whatever the signage, it results in the making of money. So how is it that you avoid being under or classified as an advertiser? A few things. First, there are four appellants. RPC is just a local business. It just wants to be able to advertise in the future in a constitutional fashion. It just wants to be able to advertise on its own site. You know, it wouldn't be a billboard, okay? That's... So it's an advertiser. So at least one of the plaintiffs is an advertiser. RPC is a local business that does advertise. It has a sign out front, but that's not a billboard. It is an advertiser, but that's not a billboard by the definition because it's not sold, leased, or donated to an advertiser. It is its own sign. So it has standing to challenge the code as a local business owner. So does Mr. Dedrick Williams, for example. He's a local politician. He's a political office holder in the next door community. He also owns a property there. Now, they will make money if New South posts a sign on their property. New South will pay them. That's the money that we're talking about. Not that they're going to get paid by an advertiser, no. Now, an American flag, there's no advertiser. Obviously, we've shown a Christian flag. We've shown paintings. These are not advertisers. So what the court did was it made inferences, and the city even said that. The court was allowed to infer, but that defies what we all know about summary judgment. The inferences have to be in the favor of the non-moving party. I think of Hicks v. Middleton, your fine decision from a month ago where you just went through that and it was the defining characteristic of that decision was you have taken everything backwards, court, at the lower level, and that should all be reversed. Same here. And your decision in Guevara earlier this year, yet the district court erroneously drew the inference that Guevara's overtime pay was $15 in favor of the moving party with emphasis, which is inappropriate at summary judgment. Maybe they'll get there, but right now the record is 100% clear that there are no advertisers on our sign. They never showed one. They never have any record evidence of it. The court inferred it, and that is totally inappropriate at the summary judgment phase. Jury might find that. I don't think so, but that would be the appropriate time to make that determination. They also said that if a billboard has a politician on it or a construction or a flag, somehow it's not subject to the exemptions. This is just a simple statutory reading problem. These exemptions, and I'll say you cannot have a city code that wouldn't allow political signs. In fact, no city has an ordinance that I'm aware of where you have to go and apply for a political sign. No city has an ordinance where you have to apply for a real estate sign. So that's why these are exempt, because in every city in America, those categories are exempt. Here, however, a plain and simple reading of this code means in accordance with the city's interpretation, means all of those signs are banned. Political signs are all banned because they all have an advertiser. They all have a party or a person that is trying to convey a message. Every single one of them, and they're on somebody else's property. If I put a political sign out front, that is a billboard under this code. No question about it. So it cannot, the billboard provision cannot apply to those exemptions. It absolutely cannot. It does not. It was never intended to. That is simply an after-the-fact justification for what the city wants to do in this case. They never intended the billboard provision to stop political signs, construction signs, temporary use signs, and other definitions in the exempt categories. I do want to note opposing counsel misspoke and stated that these signs were 200 by 200. That would be a very large sign. That would be a ridiculously large sign. These are small signs. These are not signs like you see in Atlanta. A 200 square foot sign is less than a third the size of a billboard that you would see in Atlanta. So he said 200 by 200, but what he meant was 200 square feet. Okay, that's a small sign. So this is nothing like you would see on a billboard. And then they said there's no harm from a lack of time limits. Well, this court has never authorized a 60-day delay on sign permitting. Here we had a 60-day delay on sign permitting. What this court has said is if the city or the county takes too long, you get to build your sign. There has to be a non-illusory right to put up the sign. Non-illusory. Here we had no right to put up a sign and it took at least 60 days to get a decision. That is unconstitutional in and of itself. Thank you very much. Thank you both. We have your case under advisement. Thank you.